B104
(Rev.
2/92)

# ADVERSARY PROCEEDING COVER SHEET
(Instructions on Reverse)

ADVERSARY PROCEEDING
(Court Use Only)

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Aaron Tucci and Julia Tucci | Wayne Lawrence Franks |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) <br><br> Jarrod B. Martin, McDowell Hetherington LLP <br> 1001 Fannin, Suite 2700, Houston, TX 77002 <br> (713) 337-5580 | **ATTORNEYS** (If Known) |

**PARTY** (Check one box only)  ☑ 1 U.S. PLAINTIFF  ☐ 2 U.S. DEFENDANT  ☐ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Objection to Dischargeability of Debts pursuant to 11 U.S.C. § 523(a)(2) and (a)(4)

## NATURE OF SUIT
(Check the one most appropriate box only.)

☐ **454** To Recover Money or Property

☐ **435** To Determine Validity, Priority, Extent of a Lien or Other Interest in Property

☐ **458** To obtain approval for the sale of both the interest of the estate and of a co-owner in property

☐ **424** To object or to revoke a discharge 11 U.S.C. § 727

☐ **455** To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan

☑ **426** To determine the dischargeability of a debt 11 U.S.C. § 523

☐ **434** To obtain an injunction or other equitable relief

☐ **457** To subordinate any allowed claim or interest except where such subordination is provided in a plan

☐ **456** To obtain a declaratory judgment relating to any of the foregoing causes of action

☐ **459** To determine a claim or cause of action removed to a bankruptcy court

☐ **498** Other (specify)

**ORIGIN OF PROCEEDINGS** (Check one box only.)  ☑ 1 Original Proceeding  ☐ 2 Removed Proceeding  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another Bankruptcy Court  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| **DEMAND** | NEAREST THOUSAND <br> $118,000.00 | OTHER RELIEF SOUGHT <br> attorneys' fees and costs and pre- and post-judgmt ☐ | ☐ JURY DEMAND |

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR <br> Wayne Lawrence Franks | BANKRUPTCY CASE NO. <br> 19-33529 |
|---|---|
| DISTRICT IN WHICH CASE IS PENDING <br> Southern District of Texas | DIVISIONAL OFFICE <br> Houston Division | NAME OF JUDGE <br> The Honorable David R. Jones |

## RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

**FILING FEE**  (Check one box only.)  ☑ FEE ATTACHED  ☐ FEE NOT REQUIRED  ☐ FEE IS DEFERRED

| DATE <br> 09/01/2019 | PRINT NAME <br> Jarrod B. Martin | SIGNATURE OF ATTORNEY (OR PLAINTIFF) <br> /s/ Jarrod B.Martin |

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 7** |
| Wayne Lawrence Franks, | § | |
| | § | **Case No. 19-33529** |
| Debtor. | § | |
| | § | |
| Aaron Tucci and Julia Tucci, | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| v. | § | |
| | § | **Adversary No. _____** |
| Wayne Lawrence Franks, | § | |
| | § | |
| Defendant. | § | |

---

**COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBTS PURSUANT TO 11 U.S.C. § 523(a)(2) and (a)(4)**

---

TO THE HONORABLE DAVID R. JONES, CHIEF UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs Aaron Tucci and Julia Tucci file their *Complaint Objecting to Dischargeability of Debts Pursuant to 11 U.S.C. § 523 (a)(2) and (a)(4)* owed to them by Wayne Lawrence Franks, defendant pursuant to 11 U.S.C. § 523 (a)(2)  and represents to the Court as follows:

**JURISDICTION AND VENUE**

1.      This adversary proceeding is a core proceeding arising under 28 U.S.C. §1334.

2.      This matter is a core proceeding arising under 28 U.S.C. § 157(b)(2)(I).

3.      Venue is proper under 28 U.S.C. §1409 as this adversary proceeding arises in and is related to the above-referenced bankruptcy case currently pending in this Court.

## PARTIES

4.      Plaintiffs Aaron Tucci and Julia Tucci (collectively "**Plaintiffs**") are individuals.

5.      Wayne Lawrence Franks ("**Defendant**") is an individual who resides in Harris County, Texas. The Defendant can be served with a summons at his place of residence, 12802 Highland Hills Drive Cypress, TX 77429.

## BACKGROUND FACTS

6.      On or about October 20, 2016, the Plaintiffs entered into a design services agreement ("**Agreement**") with the Defendant and Outdoor Homescapes of Houston LLC ("**OHH**") for construction of an outdoor living/kitchen addition to the Plaintiffs' home ("**Project**").  Copies of the renderings are attached as **<u>Exhibit A</u>**.

7.      Upon information and belief, OHH was a Texas limited liability company wholly owned by Defendant, which as of January 25, 2019, is no longer in good standing with the Texas Secretary of State.

8.      The Agreement required the Plaintiffs to pay $1,995.00, which was paid by Plaintiffs on or about October 20, 2016.

9.      On or about October 29, 2016, the Plaintiff's entered into a contract ("**Contract**") for the actual construction of the Project.

10.      The total sum to be paid pursuant to the terms of the Contract was seventy-four thousand seven hundred forty-one dollars ($74,741.00) ("**Contract Sum**") and required payment at the following milestones:

                Payment No. 1:       $14,948.20 Due Upon Signing (20%)

                Payment No. 2:       $22,422.30 Due Upon Start of Roof/Porch (30%)

                Payment No. 3:        $14,948.20 Due Upon Start of Util./E1ec. (20%)

| | | |
|---|---|---|
| Payment No. 4: | $14,948.20 Due Upon Start of Kitchen (20%) | |
| Payment No. 5: | $5,23 1 .87 Due Upon Start of Finish Materials (7%) | |
| Payment No 6: | $2,442.23 Due Upon Completion (3%) | |

11. In accordance with the payment terms, on or about October 29, 2016, the Plaintiffs paid OHH the sum of fourteen thousand nine hundred forty—eight dollars and twenty cents ($14,948.20).

12. Likewise, the parties further agreed that the Plaintiffs would pay OHH directly for the outdoor appliances, the parties entered into a formal agreement ("**Appliances Contract**") for the cost of said appliances totaling five thousand nine hundred fifty-two dollars and sixty-seven cents ($5,952.67) ("**Appliance Sum**").

13. On or about October 29, 2016 the Plaintiffs paid OHH the entirety of the Appliance Sum.

14. The parties began performing pursuant to the Contract, and on or about December 21, 2016, the Plaintiffs and OHH entered into a change order ("**COl**") related to the outdoor fireplace, staircase, outdoor flooring, and bathroom door for the total sum of thirty-two thousand three hundred thirty dollars ($32,330.00) ("**COl Sum**") and required payment at the following milestones:

| | | |
|---|---|---|
| Payment No. 1: | $9,699.00 | Due Upon Signing (30%) |
| Payment No. 2: | $6,466.00 | Due Upon Start of Fireplace (20%) |
| Payment No. 3: | $6,466.00 | Due Upon Start of Overlay (20%) |
| Payment No. 4: | $6,466.00 | Due Upon Start of Finish Materials (20%) |
| Payment No. 5: | $2,263.10 | Due Upon Start of Finish Materials (7%) |
| Payment No 6: | $969.90 | Due Upon Completion (3%) |

15.     In accordance with the payment terms of COI, on or about December 21, 2016, the Plaintiffs paid OHH the sum of nine thousand six hundred ninety-nine dollars ($9,699.00).

16.     At that same time, and based on the ability to perform certain work, Defendant Wayne Franks told the parties that Contract Payment No. 3 would need to be paid at that time in lieu of  Contract Payment No. 2. Accordingly, on or about December 21, 2016, the Plaintiffs paid OHH the sum of fourteen thousand nine hundred forty-eight dollars and twenty cents ($14,948.20) for Contract Payment No. 3.

17.     Then, as the work was ready to perform, on or about January 31, 2017, the Plaintiffs paid OHH the sum of twenty-two thousand four hundred twenty-two dollars and thirty cents ($22,422.30) for Contract Payment No. 2.

18.     Once again, the parties began performing pursuant to the  Contract although the progress of the work was moving very slowly,  and  on or about February 6, 2017, the Plaintiffs and **OHH** entered into a change order ("C02") related to the upstairs room finishes, skylights, and windows for the total sum of four thousand three hundred dollars ($4,300.00) ("**C02 Sum**") but did not include payment terms.  Nonetheless, on or about February 6, 2017, the Plaintiffs paid OHH the sum of four thousand three hundred dollars ($4,300.00) for the entirety of C02.

19.     Work slowly progressed and the Plaintiffs paid OHH Contract Payment No. 4 totaling fourteen thousand nine hundred forty-eight dollars and twenty cents ($14,948.20) on or about March 2, 2017, and COI Payment No. 2 totaling six thousand four hundred sixty-six dollars ($6,466.00) on or about March 6, 2017.

20.     Unfortunately, shortly after the March 6, 2017 payment, the work further slowed if not ceased altogether in the coming months, and various work that was performed began to fail.

21.     After months of lack of progress and multiple issues with the work, and in a final effort to encourage OHH to perform the work it was already required to perform, on or about August 15, 2017, the Plaintiffs paid OHH, at Defendant's request, the sum of three thousand dollars ($3,000.00) in good-faith to resume work and as a partial Contract Payment. But, once again OHH simply refused and/or failed to perform as required.

22.     As such, the total contract sum, exclusive of the design and appliance agreements, had increased  from seventy-four thousand seven hundred forty-one dollars ($74,741.00) to one hundred eleven thousand three hundred seventy-one dollars ($111,371.00), and the Plaintiffs had paid OHH the total sum of ninety thousand seven hundred thirty-one dollars and ninety cents ($90,731.90). Thus, the remaining amount to be paid amounted to twenty thousand six hundred thirty-nine dollars and ten cents ($20,639.10).

23.     Becoming increasingly concerned that the Project was irreparably delayed and that amounts paid to OHH were far in excess of the work performed, the Plaintiffs retained a third-party construction valuation professional to perform a cost-analysis of the work performed. The result, the Plaintiffs had been invoiced for eighty-seven percent (87%) of the work, they had paid for eighty-two percent (82%) of the work, and only fifty percent (50%) of the work had been performed by OHH. Defendant utilized OHH as a sham to perpetuate a fraud.

24.     Having no other alternative, the Plaintiffs were forced to retain counsel, and on or about September 29, 2017, Litigation Counsel for the Plaintiffs ("**Litigation Counsel**") sent OHH formal Notice of Default and Opportunity to Cure ("**First Notice**"). Pictures of the Project in its current state are attached as **Exhibit B**.

25.     In response, on or about October 9, 2017, OHH responded to Litigation Counsel for the Plaintiffs. While this response attempted to attribute the delays to the  Plaintiffs and

Hurricane Harvey, OHH went on to state that, "[T]he money spent getting our own people back to work has drained our financial reserves to the point where we've had to take on as much new work as we can." Lastly, OHH threatened to file an affidavit claiming a lien if the Plaintiffs did not pay OHH more money. A copy of the letter is attached as **Exhibit C**.

26.     In light of OHH's response, it became evident that OHH was using construction funds from the Plaintiffs' Project to fund OHH's operations and/or other OHH projects. In accordance with the same, on or about November 16, 2017, Litigation Counsel for the Plaintiffs sent formal notice to OHH of the Plaintiffs' claims in a final effort to resolve the issues amicably and move the Project along.

27.     In response, OHH simply offered to rescind the Contract, but as the Plaintiffs had paid OHH an amount substantially more than the work performed, including payment for appliances which were never delivered, this simply was not a viable option for the Plaintiffs.

28.     As such, on or about November 27, 2017, Litigation Counsel for the Plaintiffs sent formal correspondence to OHH declining to rescind the Contract, and once again requested an accounting of the Project.

29.     But, once again, on or about December 4, 2017, OHH simply repeated its October 9, 2017 communication without offering more.

30.     Then, on approximately December 20, 2017, OHH contacted counsel for the Plaintiffs requesting that counsel refrain from filing suit to negotiate a resolution to the issues.

31.     In reliance upon this representation, the Plaintiffs refrained from filing suit against OHH, but did not receive further correspondence from OHH.

32.     In effort to push for a possible solution to resolve this matter, on or about January 15, 2018, Litigation Counsel for the Plaintiffs once again sent formal correspondence to OHH with two (2) options to amicably reach resolution.

33.     In response, on or about January 19, 2018, OHH offered a cash payment to the Plaintiffs of twenty-five thousand dollars ($25,000.00) and delivery of the previously paid for appliances; which, Litigation Counsel for the Plaintiffs, on or about January 29, 2018, made a counteroffer of thirty-four thousand dollars ($34,000.00) and delivery of the previously paid for appliances and doors.

34.     On or about January 31, 2018, OHH re-urged its offer to Litigation Counsel for the Plaintiffs, and on or about February 8, 2018, Litigation Counsel for the Plaintiffs reduced the cash payment to twenty- nine thousand five hundred dollars ($29,500.00) provided that OHH would perform several items of work for which it had already been paid.

35.     On or about February 14, 2018, OHH agreed to the cash payment amount of twenty-nine thousand  five hundred  dollars  ($29,500.00),  agreed  to  deliver  and install the appliances, but would not agree to perform any work

36.     On or about February 23, 2018, Litigation Counsel for the Plaintiffs conditionally agreed to OHH's offer, and on or about February 28, 2018, OHH conditionally agreed to the Plaintiffs February 23, 2018 offer.

37.     Based upon OHH's February 23, 2018 offer and the representations therein, items with respect to the skylights and triangular gable windows required clarification.  Accordingly, on or about March 20, 2018, Litigation Counsel for the Plaintiffs sent OHH formal correspondence to clarify the offer.

38.     On or about March 26, 2018, OHH responded with its clarification, Litigation Counsel for the Plaintiffs responded on or about March 29, 2018 with its clarification, and on or about April 2, 2018 OHH responded with its additional clarifications.

39.     Finally, on or about May 9, 2018, after much negotiation, the Plaintiffs signed the formal Release and Settlement Agreement and sent the same to OHH; to which, OHH responded on May 14, 2018 that it would have its attorney review the Release and Settlement Agreement.

40.     With no response, on or about May 31, 2018, Litigation Counsel for the Plaintiffs contacted OHH to inquire as to the status of executing the Release and Settlement Agreement.

41.     OHH ceased all communication, and the Plaintiffs filed suit in the Fort Bend County District Court, 434th Judicial District, under cause no. 18-DCV-256270.

42.     On February 19, 2019, the Plaintiffs were granted default judgment in the amount of $117,351.94 plus post-judgment interest in the amount of 5% compounded annually beginning on September 29, 2017 against OHH (a copy of which is attached as **Exhibit D**), and Defendant and the Plaintiffs began the process of collecting on the Judgment.

43.     On June 25, 2019, the Defendant filed for bankruptcy in the above referenced case and collection efforts ceased.

### COUNT 1 – 11 U.S.C. § 523 (a)(2)

44.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 43 of this Complaint as if set forth at length herein.

45.     Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

46.     All or part of the debt owed to plaintiff, as evidenced by the Judgment entered against the Debtor, is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A).

## COUNT 2 – 11 U.S.C. § 523 (a)(4)

47.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 43 of this Complaint as if set forth at length herein.

48.     Bankruptcy Code § 523(a)(4)) provides, in relevant part, that:

(a)     A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

49.     All or part of the debt owed to plaintiff, as evidenced by the Judgment entered against the Debtor, is non-dischargeable as it is a debt for defalcation and/or embezzlement.

## ARGUMENT

50.     OHH was merely a conduit for the Defendant that allowed the Defendant to perpetrate a fraud on the Plaintiffs, taking money repeatedly and failing to perform under the contract.  The Project is incomplete. The Appliances were not delivered.

51.     The Plaintiff relied on the representations made by Defendant, entered into  the Agreement, as amended, and the Appliances Agreement, paid the Defendant on numerous occasions in amounts that exceeded the work that was accomplished, and was left with an incomplete Project and undelivered Appliances.

52.     The Defendant made false representations to the Plaintiff

53.     The Defendant knew at the time the representation was false.

54.     The Defendant made the representation with the intention and purpose of deceiving the Plaintiff.

55.     Defalcation is the misappropriate of trust funds, or the failure to properly account for such funds. The funds held by the Defendant and OHH were trust funds, and the Defendant failed to properly account for such funds.

56.     The element of a claim based on embezzlement are: (1) property owned by another that is rightfully in the possession of the Defendant; (2) Defendant's appropriate of such property to use other than the use for which the property was entrusted to Defendant; and (3) circumstances indicating fraud. It is clear that Defendant used proceeds from one project to either fund another project or fund his lavish lifestyle. Defendant knew when he entered into the agreement with Plaintiff that he would engage in such conduct.

57.     The Plaintiffs have sustained damages as a result of the Defendant's actions, including attorneys' fees and costs, defective workmanship, and an incomplete Project as a result of the Defendant's fraud as the proximate result of the Defendant's representation.

WHEREFORE, Plaintiffs pray that the Court enter a judgment that all claims by Plaintiff resulting from Defendant's fraud be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2);

that the Debtor's general discharge be barred, and for such other and further relief as the Court

deems just.

Dated: September 19, 2019                    Respectfully submitted,

                                             MCDOWELL HETHERINGTON LLP

                                             By:  /s/ Jarrod B. Martin
                                                  Jarrod B. Martin
                                                  Texas Bar No. 24070221
                                                  1001 Fannin Street
                                                  Suite 2700
                                                  Houston, TX 77002
                                                  P: 713-337-5580
                                                  F: 713-337-8850
                                                  E: Jarrod.Martin@mhllp.com

                                             *Counsel for Aaron and Julia Tucci*